No. 13,842.

BURNSIDE ET AL. *v.* REGENTS OF THE UNIVERSITY OF COLORADO.

(64 P. [2d] 1271)

Decided February 1, 1937.

Mr. W. F. ROBINSON, JR., Mr. WARREN K. ROBINSON, Mr. LEWIS A. DICK, for plaintiffs in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. CHARLES ROACH, First Assistant, Mr. PIERPONT FULLER, JR., Assistant, for defendants in error.

34

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

In this case plaintiffs in error, who were plaintiffs below, sought to enjoin the regents of the University of Colorado from operating four motor buses, which the plaintiffs claimed were being operated by the university without complying with the public utility laws of Colorado. The regents defended by saying that the operation of said buses was merely incidental to the general educational program of the university, and that because they exercise a sovereign power of the state the public utility law is not applicable to them. In addition to the injunction the plaintiffs also asked damages in the sum of $30,-000, to which plea an oral demurrer was interposed by the defendants and sustained. On a trial of the merits of the case the trial court found for the defendants and dismissed the petition, and plaintiffs assign error, both on the question of damages and injunctive relief.

The plaintiffs, of whom there were about a dozen, all operated automobiles or buses for sight-seeing purposes in the vicinity of Boulder and Rocky Mountain National Park under certificates of public convenience and necessity from the Public Utilities Commission of Colorado (designated P. U. C.), and they are here complaining, because they say that the operation of the buses by the university is injuring their (plaintiffs') business, and because the regents have never complied with the laws of Colorado governing public utilities.

It appears that the university has been conducting its summer school as an integral part of its educational program since 1904. In later years the summer school has grown to be one of the largest in the country. There is no doubt but what the advertising put out by the university telling of its scenic and climatic advantages, and informing prospective students that university tours are conducted for them, has contributed very definitely to the development of the summer school to its present size.

It appears that the university is operating these buses under a statement from the P. U. C. made in October, 1931, under which the P. U. C. ruled that the university was not subject to its regulations because the university was a state agency and not subject to the commission's jurisdiction.

It further appears that the university carries public liability insurance on the buses it operates, and that in so far as the buses are operated in Rocky Mountain National Park that they are specifically exempted from the rules and regulations of the National Park Service governing "commercial" vehicles. "When the trip to a park or parks is institutionally organized and directed and is not a private enterprise for which passengers are solicited for the profit of the organization and/or the transportation operator," it is not considered commercial.

The Constitution of Colorado, section 14, article IX, provides: "The board of regents shall have the general supervision of the university, and the exclusive control and direction of all funds of, and appropriations to, the university."

It goes without saying that the regents of the university found and determined that the operation of these four buses was a necessary incident to the more successful operation of its summer school, not from the standpoint of financial profit to itself, but in order that the students who come from all over the country may have a better opportunity to see, study, and appreciate our state's superior climatic and scenic advantages.

Thus it appears that the constitutional body which governs the university and creates, directs, and supervises its educational policy has determined the propriety of the operation of these buses in connection with the summer school. This position has been concurred in by the National Park Service, and the P. U. C. said it had no jurisdiction.

Assuming that the latter two were not in agreement with the regents on the legal result, there might be some

question as to whether this court should substitute its opinion for that of the regents, but with the two other administrative agencies joining with the regents as to the legality of the operation of the buses, as outlined, all doubt is removed as to the duty of this court. We should not and do not disturb their findings.

The attempt on the part of the plaintiffs to establish as a matter of fact that the university was appealing to the general public for passengers failed, and we accept the finding of the trial court on that issue.

Having thus decided that the university was within its legal rights, the question of damages becomes immaterial and will not be considered.

The judgment of the trial court was correct and it is hereby affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD concur.