Timothy M. O'Brien State Auditor Office of State Auditor 200 E. 14th Ave. Denver, CO 80203
Dear Mr. O'Brien:
This letter responds to your request for a Formal Attorney General Opinion concerning the University of Colorado's ability to form a captive insurance corporation under Colorado law. Your questions arose as a result of an audit last year by the Office of State Auditor. That audit raised issues resulting in the University of Colorado Insurance Corporation (UCIC), an entity created by CU to provide a variety of insurance coverages to the University and its employees. Our response is limited to the statutory and constitutional issues implicated by the formation of UCIC. We have not endeavored to provide an opinion as to the public interest or wisdom of entities such as UCIC, or to second-guess the University's efforts to achieve its educational mission in the most cost effective fashion possible. Our analysis relates solely to the authority of CU to create private corporations to further that mission. This opinion addressed the circumstances posed by the creation of UCIC in 1989, and does not address other entities created by the University under §23-5-121, C.R.S. (1991 Supp.).
QUESTIONS PRESENTED AND CONCLUSIONS
1. Is the University of Colorado Insurance Corporation a public entity subject to audit by the Office of the State Auditor?
Yes.
2. Did the University of Colorado possess constitutional or statutory authority to create the UCIC under the Colorado Corporation Code to provide insurance coverage for the University and its employees?
No.
BACKGROUND
The University of Colorado formed UCIC, a for-profit corporation, on July 12, 1989, under the Colorado Captive Insurance Company Act, §§ 10-6-101 to -130, C.R.S. (1987), and it has been certified by the Colorado Division of Insurance. CU created UCIC for the purpose of providing for the insurance needs of the University and of University affiliates. The Colorado Captive Insurance Company Act states that the laws governing insurance companies generally shall apply to captive insurance companies except to the extent they are inconsistent with the Colorado Captive Insurance Company Act. Section 10-6-130, C.R.S. (1987). All captive insurance companies must be incorporated and organized under the general corporation laws of this state pertaining to private, for-profit corporations, § 10-6-112, C.R.S. (1987), and must comply with the investment requirements for other insurance companies under Colorado law, §10-6-121(1), C.R.S. (1987). Thus, to be eligible for certification under state insurance law, CU needed to create an entity that expressly was not "public" or, under statutory definitions, not "nonprofit." Section 10-6-130, C.R.S. (1991 Supp.).
Under Colorado corporate provisions, CU created and issued UCIC common stock, which is wholly owned by the University of Colorado Board of Regents. The corporation is authorized to issue 5,000 shares with a par value of $300.00 each. Shares may not be issued to any entity other than the Regents, and university affiliates may not own any shares of the corporation. UCIC's directors and officers are University employees and employees of University affiliates. UCIC's administrative offices are within the facilities of the University of Colorado. UCIC's articles of incorporation describe UCIC as an "affiliate" of the University of Colorado, and in the event of its dissolution, all remaining assets of the corporation are to be transferred to the University. The assets of the University's self-insurance program (approximately $5.5 million) were used to capitalize the corporation. The University's prior insurance program was a self-insurance trust.
UCIC provides coverage for (1) direct damage to the University's buildings, their contents and boilers, (2) business interruption for the University and its affiliates, (3) the professional errors and omissions of directors and officers, (4) auto liability and comprehensive/collision, (5) general liability for bodily injury and property damage, and (6) workers' compensation and medical malpractice.
ANALYSIS
I. UCIC is a public entity subject to the State AuditorsAuthority to the same extent as any other public entityaffiliated with the University of Colorado.
A. Constitutional Analysis
Article IX, § 12 of the Colorado Constitution establishes the University Regents as a constitutional entity with broad discretion as a governing board. Associated Students of theUniversity of Colorado v. Regents of University ofColorado, 189 Colo. 482, 543 P.2d 59, 61 (1975). The Regents function not only as an agency of the state, but also enjoy rights and responsibilities analogous to those of a private corporation. People ex rel. Jerome v. Regents ofUniversity of Colorado, 24 Colo. 175, 178-79, 49 P. 286,287-88 (1897); Colorado Civil Rights Comm'n v. Regents ofthe University of Colorado, 759 P.2d 726, 731
(Colo. 1988). The Regents retain "the general supervision of their respective institutions and the exclusive control and direction of all funds of and appropriations to their respective institutions, unless otherwise provided by law." Colo. Const. art. VIII, § 5(2) (emphasis added).
The Regents' statutory authority encompasses the enactment of laws for the government of the University, the appointment of teaching and other personnel, fixing salaries, employment of medical personnel and the conferring of various degrees. Sections23-20-112 to 115, C.R.S. (1988); see also Kreithv. University of Colorado, 689 P.2d 718, 719 (Colo.App. 1984). The Regents also have the authority to hold investments in one or more consolidated investment funds, and to hold certificates of stock in the name of a nominee in a fiduciary capacity. Sections 23-20-118 to 119, C.R.S. (1988).
Although the Board of Regents enjoys broad discretion, its "specific and particular powers" granted by these constitutional and statutory provisions, Uberoi v. University ofColorado, 713 P.2d 894, 898 (Colo. 1986), have never been interpreted to encompass the creation and operation of private, for-profit, entities separate and distinct from the University.See Associated Students of the University ofColorado v. Regents of the University of Colorado,189 Colo. 482, 543 P.2d 59 (Colo. 1975) ("General supervision" powers preclude application of sunshine law to executive sessions of the Regents) (later overturned by statute); City ofBoulder v. Regents of the University of Colorado,179 Colo. 420, 501 P.2d 123 (Colo. 1972) (municipal law requiring University to collect municipal admissions tax upon charges made to attend University events held to interfere with "exclusive control and direction of all funds" and "general supervision" of the University, since requiring collection would interfere with financial conduct and allocation of man-power for statewide educational duties, and because public university events are part of the education process); SIGMA CHI Fraternity v.Regents of the University of Colorado, 258 F. Supp. 515, 526
(D. Colo. 1966) (power to regulate affairs of University includes resolution mandating probationary status for fraternities denying membership to any person due to race, color or religion);Buttny v. Smiley, 281 F. Supp. 280 (D. Colo. 1968) (Regents have power to place restrictions on certain student conduct).
The broad discretion granted to the University by Article VIII, § 5(2) with respect to its authority to operate the University certainly extends to provision in some form for its insurance needs. Over the years, the University has addressed this need through a self-insurance trust. The University then sought to meet this need by creating UCIC, ostensibly as a private insurance corporation with a separate corporate existence from the University. Therefore, an initial inquiry must be made regarding whether UCIC is indeed a private entity, or must be considered a public affiliate of the University. UCIC's incorporation as a private, for-profit, insurance corporation, however, is not determinative of whether it is a state entity.
The assessment of whether an entity is a state agency must be based more in political and functional realities than in organizational formalities. See Alaska CommercialFishing Agriculture Bank v. O/S Alaska Coast, 715 P.2d 707,710-711 (Alaska 1986). In Colorado Ass'n of PublicEmployees v. Board of Regents of University ofColorado, 804 P.2d 138 (Colo. 1990), the Colorado Supreme Court considered whether the General Assembly's effort to take CU's hospital and reorganize it as a private, non-profit Hospital effectively privatized that entity:
 Private nonprofit corporations are corporations formed by private individuals for a public purpose in which, "no part of the income or profit of which is distributable to its members, directors or officers,. . . ." Section 7-20-102(10), 3A C.R.S. (1986). In contrast, public corporations are created as subdivisions of the state as an expedient device to carry out the functions of government. In People ex rel. Rogers v. Letford, 102 Colo. 284, 295, 79 P.2d 274, 281 (1938), we stated: "Public corporations are all those created specially for public purposes as instruments or agencies to increase the efficiency of government, supply public wants, and promote the public welfare."
Id. at pp. 142-143. The court stated in the context of the attempt to privatize CU's hospital that whether an entity is considered "public" depends upon whether: 1) it is founded and maintained by private interests; and 2) the state is involved in the management or control of its property or internal operations.Id. at 143.
Under this analysis, UCIC constitutes a public entity despite its formation as a "private corporation" under the State's general corporation laws. With respect to the first factor, UCIC was established by the University of Colorado and its incorporator was the Treasurer and Assistant Vice President for Budget and Finance for the University of Colorado. Thus, UCIC was founded by state officials for public purposes, not by private individuals for commercial purposes. This was done without any statutory grant of authority by the General Assembly.
Secondly, the University has retained complete control over the operation of UCIC. According to UCIC's articles of incorporation, initial funding is directed and controlled by the Board of Regents, corporate shares are 100% owned by the Board of Regents, and UCIC is an "affiliate" of the University of Colorado. UCIC is operated by State officials, since its Board of Directors and Officers are employees of the University of Colorado and its affiliates. University assets were used to capitalize the corporation, and upon its dissolution, all remaining assets of the corporation are to be transferred back to the University of Colorado. Distribution of corporate assets may be made in the interim to the University of Colorado. Again, UCIC was created without any statutory grant of authority.
In view of the Regents' creation of UCIC and their continued control of the corporation through its Directors and Officers, it is evident that UCIC does not operate independently from the University. Accordingly, UCIC is a public entity affiliated with the University of Colorado. UCIC, as an "institution of state government," is thus subject to the state auditor's constitutional and statutory authority under art. V, § 49 of the Colorado Constitution and § 2-3-103, C.R.S. (1991 Supp.) to the same extent as any other public entity affiliated with the University of Colorado.
B. Statutory Analysis
In addition to the constitutional limitations on the creation of UCIC, there is no statutory basis for the establishment of an entity such as UCIC to help provide CU's insurance needs. Title 24, article 75, part 6, C.R.S. (1988 1989 Supp.) provides the general statutory provisions regarding the lawful investment of public funds and other moneys by the State and its subdivisions such as CU. Section 24-75-601 is a definitional section. Section24-75-601.1 concerns lawful investment of public funds in securities: subsection (1) of this section specifies what securities constitute lawful investments of public funds; subsection (2) requires that such investments further conform with the standard set forth in § 15-1-304, C.R.S.; subsections (3) and (4) provide that the restrictions of the section are not limitations on other powers or authorities otherwise authorized by law and do not refer to certain specified public funds.
Nothing in these sections indicates a legislative intent that the University be empowered to form, capitalize and hold stock in a private insurance corporation. Although § 24-75-601.1(3)(c), C.R.S. (1991 Supp.) does state that § 24-75-601.1(3)(c) is not intended to limit the Regents' authority to invest "any funds available to it in any security or other investment" if such security or other investment is "otherwise provided by law," this exception contemplates the use of funds in passive investments available to the University. See § 23-20-118 and 119, C.R.S. (1988). The investment statutes expressly reference investment "funds" and stock certificates held by another in a fiduciary capacity; i.e., forms of investment in which the University exerts no actual management or control over the entities in which the funds are invested. The creation of UCIC goes far beyond a passive investment in securities, and, in effect, constitutes the use of public funds to set up and run what would have been a private business. This is not a use of funds sanctioned by the legislature by § 24-75-601.1, C.R.S. (1991 Supp.).
In sum, the constitutional authority of the regents contained in art. VIII, § 5(2), and as applied by statute and in Colorado case law, does not extend to the creation and operation of a distinct for-profit insurance corporation such as UCIC. Moreover, there is nothing in the Colorado statutes concerning investment of state funds to indicate a legislative intent that the University be empowered to form, capitalize and hold stock in a private insurance corporation.
Your inquiry also related to whether nonprofit corporations established under § 23-5-121 would be subject to the auditor's authority under art. V, § 49 of the Colorado Constitution. However, as is evident from the discussion of UCIC set forth above, such a determination is fact specific and must be determined on a case-by-case basis. Therefore, consideration of that issue would be inappropriate at this time.
CONCLUSION
UCIC as constituted is a public entity subject to auditing oversight by the Office of State Auditor.
Sincerely,
 GALE A. NORTON Attorney General
PUBLIC AGENCIES CORPORATIONS EDUCATION, HIGHER
H.B. 1143
Section 7-20-102(10), C.R.S. (1986) Section 7-20-104, C.R.S. (1986) Section 7-23-106(3), C.R.S. (1986) Sections 10-6-101 to 130, C.R.S. (1987) Section 23-1-109.5(1), C.R.S. (1991 Supp.) Section 23-5-121, C.R.S. (1991 Supp.) Sections 23-20-111 to 119, C.R.S. (1988) Sections 23-21-401 to 411, C.R.S. (1991 Supp.)
Colo. Const. art. VIII, § 5(2) Colo. Const. art. IX, § 2
Colo. Const. art. XI, § 2
AUDITOR, OFFICE OF STATE
UCIC is subject to statutory oversight as a public entity, and CU may not create a private, for-profit corporation.