**William D. DAWSON,
Applicant–Appellee,**

**v.**

**The STATE COMPENSATION
INSURANCE AUTHORITY,
Respondent–Appellant.**

**No. 89CA1280.**

Colorado Court of Appeals,
Div. III.

Sept. 13, 1990.

Rehearing Denied Nov. 8, 1990.

Certiorari Denied June 3, 1991.

Holland & Hart, James J. Gonzales, A. Bruce Jones, Linda C. Michow, Denver, for applicant-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Aurora Ruiz–Hernandez, Asst. Atty. Gen., Denver, for respondent-appellant.

Opinion by Judge TURSI.

The State Compensation Insurance Authority (SCIA) (now Colorado Compensation Insurance Authority, *see* § 8–54–123, C.R.S. (1990 Cum.Supp.)), appeals an order of the district court classifying the SCIA as a political subdivision subject to the provisions of The Public Records Act, § 24–72–201, et seq., C.R.S. (1988 Repl.Vol. 10B), and permitting applicant, William Dawson, to inspect and copy SCIA's records. We affirm.

Dawson requested permission to inspect and copy certain records of the SCIA. It denied Dawson's requests on the basis that, though it was created as a "body corporate and a political subdivision," § 8–54–102.5(1), C.R.S. (1986 Repl.Vol. 3B), its records are not subject to inspection because the Act has not been amended to include it within the definition of a political subdivision susceptible to the Act's application.

The issue before us is whether the Act applied to the SCIA even though the Act does not specifically include it within the definitions of "political subdivision." *See* § 24–72–202(5), C.R.S. (1988 Repl.Vol. 10B). We conclude that the SCIA is a political subdivision for purposes of the Act and that, accordingly, its records are susceptible to inspection and copying by the public.

The legislative declaration of the Act states:

"It is declared to be the public policy of this state that *all public records* shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise specifically provided by law." (emphasis supplied)

Section 24–72–201, C.R.S. (1988 Repl.Vol. 10B).

"Public records" are defined in § 24–72–202(6), C.R.S. (1988 Repl.Vol. 10B) of the Act to include:

"all writings made, maintained, or kept by the state or *any* agency, institution, or *political subdivision* thereof for use in the exercise of functions required or authorized by law or administrative rule...." (emphasis supplied)

The SCIA, nevertheless, contends that the Act's definition of "political subdivi-

sion" excludes it from the Act. That definition, in § 24–72–202(5), C.R.S. (1988 Repl. Vol. 10B), provides:

"'Political subdivision' means and includes every county, city and county, city, town, school district, and special district within this state."

We are not persuaded by the SCIA's argument.

The Act is a general statutory scheme with a broad scope and purpose. *Sargent School District No. RE–33J v. Western Services, Inc.,* 751 P.2d 56 (Colo.1988). The SCIA is a statutorily-created political subdivision of the state which, for purposes of the Act, is indistinguishable from other political subdivisions to which the Act applies. Section 8–54–102.5, C.R.S. (1986 Repl.Vol. 3B). Moreover, SCIA documents do not fall within any of the exceptions enumerated within § 24–72–204, C.R.S. (1988 Repl.Vol. 10B).

In *Uberoi v. University of Colorado,* 686 P.2d 785 (Colo.1984), our supreme court narrowly construed the term "institution," thereby rejecting a more liberal interpretation that the Act was intended to apply to a state institution of higher education. Thereafter, the General Assembly amended the Act to include a broad definition of "institution," § 24–72–202(1.5), C.R.S. (1988 Repl.Vol. 10B), thus reflecting *Uberoi*'s strict construction of the Act.

Thus, the rejection of *Uberoi* by the General Assembly, coupled with the Act's articulated public policy promoting public inspection of "all" public records of "any" political subdivision, leads us to conclude that the Act does apply to the SCIA, notwithstanding its absence from the statutory definition.

Furthermore, we note that the phrase "means and includes" is self-contradictory inasmuch as the term "means" restricts and the term "includes" extends the meaning of "political subdivision." *Colorado Common Cause v. Meyer,* 758 P.2d 153 (Colo.1988) (use of term "includes" extends statutory definition); *see generally* 2A N. Singer, *Sutherland Statutory Construction* § 47.07 (4th ed. 1086).

When the Act's definition of "political subdivision" is interpreted to include the SCIA, the legislative intent is properly advanced and a consistent and harmonious result is achieved with the Act's remaining provisions. *See Ouray v. Olin,* 761 P.2d 784 (Colo.1988); *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986). A contrary interpretation would defeat the Act's purpose and give weight to a probable oversight of the Revisor of Statutes. *See Ouray v. Olin, supra.* Under these circumstances, the trial court's construction of the statutory definition of "political subdivision" to include the SCIA was proper.

The order is affirmed.

NEY and DUBOFSKY, JJ., concur.